**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **BALFOUR BEATTY INFRASTRUCTURE, INC**. | * | |
| 999 Peachtree Street, N.E. Suite 900 | * | |
| Atlanta, Georgia 30309 | * | |
| | | |
| Plaintiff/Petitioner | * | CIVIL ACTION NO. _____ |
| | | |
| v. | * | |
| | | |
| **MAYOR AND CITY COUNCIL OF BALTIMORE** | * | |
| 100 Holliday Street | * | |
| Baltimore, Maryland  21202 | | |
| | * | |
| SERVE: | | |
|     Dana P. Moore, Acting City Solicitor | * | |
|     Baltimore City Hall | | |
|     100 Holliday Street | * | |
|     Baltimore, Maryland 21202 | | |
| | * | |
| And | | |
| | * | |
| **DIRECTOR OF THE CITY OF BALTIMORE DEPARTMENT OF PUBLIC WORKS** | * | |
| 200 Holliday Street, Suite 600 | * | |
| Baltimore, Maryland  21202 | | |
| | * | |
| SERVE: | | |
|     Dana P. Moore, Acting City Solicitor | * | |
|     Baltimore City Hall | | |
|     100 Holliday Street | * | |
|     Baltimore, Maryland 21202 | | |
| | * | |
| And | | |
| | * | |
| **CHIEF OF THE CITY OF BALTIMORE ENGINEERING AND CONSTRUCTION** | * | |
| 200 N. Holliday Street, Suite 305 | * | |
| Baltimore, Maryland  21202 | | |
| | * | |

SERVE:
  Dana P. Moore, Acting City Solicitor  *
  Baltimore City Hall
  100 Holliday Street      *
  Baltimore, Maryland 21202
              *

     Defendants/Respondents

\*  \*  \*  \*  \*  \*  \*

## COMPLAINT FOR VIOLATION OF DUE PROCESS, SPECIFIC PERFORMANCE, AND PETITION FOR WRIT OF MANDAMUS

Balfour Beatty Infrastructure, Inc. ("BBII"), as successor-in-interest to Fru-Con Construction, LLC, by and through its undersigned counsel, brings this action against Defendants Mayor and City of Baltimore ("City"), Director of the City of Baltimore Department of Public Works ("Director"), and, Chief (formerly known as Bureau Head), The City of Baltimore Office of Engineering and Construction ("Chief") and alleges:

### INTRODUCTION

1.  The City has violated BBII's due process rights by wrongfully failing to decide long outstanding claims BBII submitted against the City. BBII's claims total tens of millions of dollars and have been pending for several years; yet, the City and its officials, the Chief and the Director, have failed to act in accordance with the City's Charter and the applicable Contracts with BBII.

2.  On or about November 20, 2009, BBII entered into the first of two contracts with the City for construction work related to the Patapsco Wastewater Treatment Plant. The first contract is known as Sanitary Contract 852R ("SC 852R"). The second contract is known as Sanitary Contract 845R ("SC 845R") and was entered on or about July 11, 2012. Both Contracts incorporate and include the City of Baltimore Department of Public Works Specifications, 2006 edition ("Green Book").

3.       For both Projects, the Contracts and incorporated Green Book require that any claims or requests for additional compensation submitted by BBII to the City be resolved through a City-administered dispute resolution procedure ("Dispute Process"). The first step of the Dispute Process requires the City's Division Head to review and attempt to resolve the claim or request for additional compensation. The second step of the Dispute Process following the Division Head review provides that the Bureau Head[1] **shall** review and timely resolve all Claims submitted. The last step of the Dispute Process culminates with the Director rendering a decision on any and all outstanding Claims in one hearing following completion of the work.  See 00 73 84 4.a, Green Book.

4.        Both Contracts and the City Charter provide that the Director's decision is "subject to review on the record by a court of competent jurisdiction."

5.       The City Charter further provides:

> Art. II, §4A(c) Limitations.
> A claim is barred unless the claimant <u>files</u> <u>suit</u> within 1 year from the date on which the claim arose or within 1 year <u>after</u> completion of the contract giving rise to the claim, whichever is later. (emphasis added)

6.       On January 10, 2019, the City issued Conditional Acceptance for both Projects recognizing that the work was "essentially complete." See 00 23 00.01, Definition of City Terms, Green Book.

7.       On January 14, 2020, the City issued Final Acceptance for both Projects, more than a year after Conditional Acceptance.  The Contract defines acceptance as:

> The acceptance of Contract Work by the City after it has verified that the Equipment and systems are fully operational,

---

[1] The City reorganized the Department of Public Works during the Projects. The Chief has replaced the Bureau Head.

all warranty work is complete and the contractor has fulfilled
its Contract obligations.

To date, however, the Chief has only issued a single decision on the various claims submitted by

BBII and set forth below. The Director and the City have failed to issue <u>any</u> final decisions as

required.

8.      Related to SC 852R, BBII submitted 7 Claims and 33 Change Order Requests

(requests for additional compensation), which have been pending for several years; some more

than **six (6) years**. Related to SC 845R, BBII submitted 11 Claims and 79 Change Order

Requests, which have also been pending for several years, some more than **six (6) years**.

Between the two Projects, BBII's Claims and Change Order Requests exceed $54 million.

9.      The Defendants' unreasonable delays and failures to comply with the Contracts in

resolving or addressing BBII's claims represent a violation of BBII's due process rights under

the Fourteenth Amendment of the United States Constitution. Additionally, the Defendants

failures are a material breach of the Contracts and the City's Charter.

10.     As a result of the Defendant's failures and unreasonable delays, BBII is

prejudiced because, absent completion of the Dispute Process, BBII is unable to pursue any court

review of the decisions made on BBII's Claims including, but not limited to, the Defendants'

unreasonable delay. Additionally, the Defendant's unreasonable delays have jeopardized the

availability of key witnesses.[2]

11.     For these reasons, and as more fully set forth below, BBII brings this action

against the City pursuant to the Fourteenth Amendment to the United States Constitution and 42

---

[2] Several key witnesses are no longer employees of the City or BBII. In fact, on July 28, 2016 the City's Construction Project Supervisor for the Project, Don Lambrow, passed away. BBII attempted to take Mr. Lambrow's deposition to preserve his testimony, but the City opposed BBII's efforts by seeking and receiving a protective order from the local state court.

U.S.C. § 1983 for deprivation of BBII's due process rights and for specific performance. BBII petitions for a Writ of Mandamus requiring the Chief and the Director to immediately perform their obligations in accordance with the contractual Dispute Process.

## PARTIES, JURISDICTION AND VENUE

12.    Plaintiff/Petitioner, BBII is a Delaware corporation authorized to do and doing business in the Commonwealth of Maryland with its headquarters and principal place of business in Atlanta, Georgia.

13.    Defendants/Respondents, Mayor and City Council of Baltimore, the Director, and the Chief, are officials of the City of Baltimore, a municipality located in the State of Maryland.

14.    Plaintiff brings a claim 42 U.S.C. § 1983 for violation of due process.

15.    In accordance with 28 U.S.C. § 1331, a federal question is present in this matter.

16.    In accordance with 28 U.S.C. § 1332, diversity of citizenship is present in this matter.

17.    The amount in controversy, exclusive of interest and costs, is in excess of $75,000.00, as required under 28 U.S.C. § 1332.

18.    The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a).  Accordingly, this Court has jurisdiction to issue a Writ of Mandamus.

19.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in the State of Maryland and a substantial part of the events that gave rise to BBII's claims took place within the District and the State of Maryland.

**THE CONTRACTS**

20.     On or about November 20, 2009, Fru-Con Construction Corporation entered into a Contract with the City for the construction of the "SC 852 Denitrification and Related Work for the Enhanced Nutrient Removal Facilities at Patapsco Wastewater Treatment Plant" ("SC 852R").  The executed portion of the SC 852R Contract is attached as Exhibit 1.  Certain excerpts from the Green Book are attached as Composite Exhibit 3.  The remainder of the SC 852R Contract is voluminous, but already in possession of the Defendants and is, therefore, not attached.

21.     On May 24, 2011, the SC 852R Contract was assigned by agreement with the City from Fru-Con Construction Corporation to Fru-Con Construction, LLC.

22.      On June 15, 2011, BBII acquired all membership interests in Fru-Con Construction, LLC and became its sole member. The City agreed to this transfer of membership interest.

23.     On or about July 11, 2012, Fru-Con Construction, LLC entered into a Contract with the City for the construction of the "SC 845R – Nitrification Filters and Related work for the Enhanced Nutrient Removal Facilities at Patapsco Wastewater Treatment Plant" ("SC 845R").  The executed portion of the SC 845R Contract is attached as Exhibit 2.  Certain excerpts from the Green Book, which is a part of this SC 845R Contract, are already attached as Composite Exhibit 3.  The remainder of the SC 852R Contract is voluminous, but already in possession of the City and is, therefore, not attached.

24.      On January 1, 2014, Fru-Con Construction, LLC was fully merged into Plaintiff/Petitioner, BBII and it is now an operating division of BBII.

6

25.     On or about January 14, 2019, the City provided BBII with notice that it had "essentially" completed the work on SC 852R and SC 845R as of January 10, 2019 and issued Conditional Acceptance for both Projects.

26.     On or about January 14, 2020, the City issued Final Acceptance for the completed work on SC 852R and SC 845R.

27.     Notwithstanding the City's recognition that the work is completed and the issuance of both Conditional and Final Acceptance, BBII's numerous Claims remain pending and unaddressed by the Chief, the Director, and the City.

## THE DISPUTE PROCESS

28.     The Charter of Baltimore City ("City Charter"), Article II, §4A(g) provides:

> Notwithstanding the provisions of subsections (e) and (f) of this section, with regard to a construction contract to which it is a party, Baltimore City may provide or require that if there is a dispute between the parties involving $10,000 or more over the terms of the contract or performance under the contract, **the dispute is subject to a determination of questions of fact by an officer or official body of Baltimore City**, subject to review on the record by a court of competent jurisdiction. (Emphasis added).

29.     The Green Book provides a hierarchical dispute resolution process culminating in a decision from the Director of Public Works as follows:

### 2.  INITIAL REVIEW OF CLAIM OR DISPUTE

a.  The Inspector assigned to the project, the Engineer, and the Division Head of Construction Management (and/or any individual or entity designated by the Head) shall each review the substance of the said claim and may request additional information from the Contractor.  The contractor shall fully and completely respond to all such requests for additional information within (5) business days from its receipt of any such written request for additional claim or be deemed to have forfeited its right to recovery of additional time or costs in connection with the claim or dispute.

7

    b.   Where appropriate the Division Head may resolve the claim through negotiation at its sole discretion.

    c.   The division head may resolve the claim in whole or in part; or deny the claim in whole or in part.

    d.   Any claims that are denied in whole or in part, unless otherwise waived by the Contractor, must be appealed in writing by the Contractor to the Engineer within thirty (30) days of the date of a written denial being issued by the Division Head as a condition precedent to the Contractor's right to further prosecute the claim.

**3.   REVIEW BY HEAD OF BUREAU**

    a.   Claims and/or disputes appealed to the Bureau Head shall be reviewed and resolved in a **timely manner**, which shall depend upon the complexity and circumstances of the claim(s). (Emphasis added).

    b.   The Bureau Head shall have all of the authority and powers to settle disputes that are not settled by the Division Head to resolve the matter.

    c.   Disputes and/or claims that are not resolved and/or settled by the Bureau Head to the satisfaction of the Contractor may be reserved by the Contractor for final review by the Director by giving written notification to the Director within thirty (30) days of the date of the written decision of the Bureau Head, with such thirty (30) days written notification being a condition precedent to the Contractor's right to further prosecute the claim or dispute.

**4.   REVIEWS BY THE DIRECTOR OF THE APPLICABLE DEPARTMENT**

    a.   The Director of the applicable department shall act as the Hearing Officer and **shall hold one (1) administrative hearing on the record at the conclusion of the Work** on the Contract to resolve all claims and/or disputes, which have been timely, appealed to the Director, pursuant to these procedures.

    b.   The cost of transcription shall be borne equally among the parties.

    c.   The decision of the Director is final and conclusive, but is subject to review on the record by a court of competent jurisdiction pursuant to the Baltimore City Charter.

30.     The Contracts recognize that all claims and/or disputes appealed to the Bureau

Head, a position now known as the Chief, shall be reviewed and resolved in a *timely manner*.

The Defendants' failure to meet their obligations under the contract terms and conditions

constitutes a material breach and has resulted in BBII suffering a deprivation of its due process
rights.

### THE CITY HAS WRONGFULLY DELAYED THE DISPUTE PROCESS

31.     During the SC 852R and SC 845R Projects, BBII timely and properly submitted
Claims - **all** of which remain pending without a final response from the Defendants. Further, the
City has assessed liquidated damages totaling approximately $50 million against BBII for
alleged late completion of the Projects.

32.     Related to the SC 852R Project, BBII submitted 7 Claims and 33 Change Order
Requests (requests for additional compensation). BBII's Claims and Change Order Requests are
in excess of $17 million for this Project and have been pending for years,

33.     As an example of the Defendants' material breach and violation of BBII's due
process rights, BBII's Claim identified as the "Filter Leak Claim" has been pending since 2013 –
almost 7 years.

    a.   In August 2013, the City's Division Head held a hearing on BBII's Filter Leak
        Claim and shortly thereafter denied BBII's Claim.

    b.   After receipt of the Division Head's denial, BBII timely requested an appeal to
        the Chief. More than a year passed before BBII was advised that the Chief would
        consider BBII's claim. The City directed BBII to submit additional materials for
        the Chief's consideration. In September 2014, BBII timely complied with this
        request. The Chief, however, has yet to make any determination concerning
        BBII's claim even though: more than seven (7) years have passed since the claim
        was submitted; more than six (6) years have passed since BBII made its
        supplemental submission; nearly two (2) years have passed since the City

declared the work "essentially complete" and issued Conditional Acceptance; and

nearly a year has passed since the City issued Final Acceptance.

34.     Related to the SC 852R Project, the Chief has issued only one decision on any of

BBII's Claims and Change Order Requests.  The Director has not scheduled a hearing for any of

the Claims and Change Order Requests even though the work is complete. A complete list of

BBII's pending SC 852R Claims and Change Order Requests is attached as Exhibit 4.

35.     On the SC 845R Project, BBII submitted 11 Claims and 69 Change Order

Requests which have been pending for several years. Neither the Chief nor the Director have

made any attempts to resolve these pending Claims nor have they rendered **any** decisions. Like

the SC 852 Project, even though the work is complete, the Director has not scheduled a hearing

for these Claims and Change Order Requests. A complete list of BBII's pending SC 845R

Claims and Change Order Requests is attached as Exhibit 5.

**COUNT I**
**DUE PROCESS VIOLATION**

36.     BBII re-alleges and incorporates by reference the allegations contained in

Paragraphs 1 – 35 above, as though specifically set forth herein.

37.     The City and the Director developed a practice of failing and unreasonably

delaying resolution of claims for additional compensation contractors submit on construction

contracts with the Department of Public Works. The City and the Director further developed a

practice of assessing liquidated damages against such contractors and contacting contractors'

sureties even though such action is not warranted. The City and the Director developed the

foregoing practice irrespective of a contractor's rights under the contract and irrespective of the

merits of the contractor's claim. The City and the Director developed and implemented the

foregoing practice to influence contractors thereby depriving the contractors of their due process

rights and liberty interests. The practice the City and the Director developed and implemented is pervasive throughout the City's Department of Public Works of which the Director controls.

38.     The City and the Director violated BBII's due process rights by: (1) implementing and continuing the practice set forth in Paragraph 37; (2) materially breaching the contracts and Dispute Process by failing to follow the Contractual provisions in regards to resolution of the Claims BBII submitted under the contracts; and (3) permitting the inaction of the Chief and the Director in the Dispute Process.

39.     By the actions set forth above, the City and the Director have deprived BBII of its property rights and liberty interests by effectively taking BBII's property without notice and a hearing.

40.     The laws of the United States provide BBII with relief if its due process rights have been infringed upon by government employees.

41.     The City and the Director violated BBII's due process rights because: 1) the length of the Defendants' delay in deciding BBII's multiple claims is egregious and improperly denies its claims irrespective of entitlement; 2) the reason for the Defendants' delay is not attributable to BBII; 3) BBII has properly asserted its rights under the Contracts; and 4) BBII has and continues to be prejudiced by the Defendants' delay.

42.     Notwithstanding the Defendants' failures and unreasonable delays, BBII has taken all steps possible, including bringing an earlier action against the City, in order to have its Claims heard.

43.     As a result of the Defendants' failures and unreasonable delays, BBII has been prejudiced by, among other things, loss of available witnesses.

11

WHEREFORE, Plaintiff/Petitioner, Balfour Beatty Infrastructure, Inc., respectfully requests that the Court enter judgment in its favor, finding that the actions and failures of the Defendants/Respondents the Mayor and City Council of Baltimore and the Director have violated Balfour Beatty Infrastructure, Inc.'s due process rights, ordering the Defendants to immediately commence and complete the Dispute Process, and awarding such other and further relief as this Court deems appropriate.

**COUNT II**
**SPECIFIC PERFORMANCE**

44.     BBII re-alleges and incorporates by reference the allegations contained in Paragraphs 1 – 35 above, as though specifically set forth herein.

45.     The City materially breached the Contracts by not following the Dispute Process and allowing the inaction of the Chief and the Director; therefore, specific performance of the Dispute Process is warranted.

46.     Specific performance of the Dispute Process should be ordered because: 1) the Contracts are sufficiently definite; 2) BBII fully performed its part of the Contracts; 3) money damages are unavailable at this time; and 4) there is no adequate remedy at law.

47.     Money damages are unavailable to BBII because it is unable, at this time, to bring a suit in a competent court of jurisdiction for money damages until all the administrative remedies in the Contracts are exhausted. The Defendants, however, refuse to or have failed to proceed with the Dispute Process, thereby obviating and breaching BBII's contractual rights. Specific performance is required so that the Dispute Process (the administrative remedy) is complete, thus allowing BBII the opportunity to bring an action in court.

48.     BBII is without an adequate legal remedy, as the Department of Public Works has failed to resolve its Claims within a reasonable time.

WHEREFORE, Plaintiff/Petitioner, Balfour Beatty Infrastructure, Inc., respectfully requests that the Court enter judgment in its favor and against Defendant, the Mayor and City Council of Baltimore, and order the City to proceed with and complete the Disputes Process in a reasonable period of time, and award such other and further relief as this Court deems appropriate.

**COUNT III**
**WRIT OF MANDAMUS**

49.     BBII re-alleges and incorporates by reference the allegations contained in Paragraphs 1 – 35 above, as though specifically set forth herein.

50.      BBII petitions for a Writ of Mandamus directing the Chief and the Director to perform their contractually mandated tasks in their official capacities.

51.     BBII has an undisputable right to an administrative review by an officer or official of the City of Baltimore as it relates to the claims it has brought against the City. *See* Charter of Baltimore City, art. II, § 4(A)(g) (2002 revision)

52.     The Chief and the Director are obligated by their ministerial duties to resolve claims through the mandatory contractual Disputes Process.

53.     BBII is without an adequate legal remedy when it is not permitted to pursue legal action until all administrative remedies are exhausted and the Chief and the Director refuse to perform their ministerial duties.

**WHEREFORE**, Plaintiff/Petitioner, Balfour Beatty Infrastructure, Inc., respectfully requests that the Court enter a Writ of Mandamus directing the Chief and the Director to perform their ministerial duties under the Contracts in a reasonable period of time and award such other and further relief as this Court deems appropriate.

13

Dated this 30th day of November, 2020.

                                                       /s/
                                              _____
                                              James E. Edwards, Jr. (Trial Bar No. 02360)
                                              Kyle S. Kushner (Trial Bar No. 20305)
                                              BAKER, DONELSON, BEARMAN,
                                              CALDWELL & BERKOWITZ, P.C.
                                              100 Light Street, 19th Floor
                                              Baltimore, Maryland  21202
                                              jedwards@bakerdonelson.com
                                              kskushner@bakerdonelson.com
                                              410-685-1120